**In re James Garfield POWELL, and Pamela Renee Powell, Debtors.**

**GENERAL FINANCE COMPANY OF VIRGINIA, Plaintiff,**

v.

**James Garfield POWELL, and Pamela Renee Powell, Defendants.**

**Bankruptcy No. 79–01355.**

United States Bankruptcy Court, E. D. Virginia.

Jan. 28, 1980.

Stanford R. Peerless, Norfolk, Va., for General Finance.

Alexander P. Smith, Norfolk, Va., for debtors.

HAL J. BONNEY, Jr., Bankruptcy Judge.

In this case of first impression, General Finance Corporation of Virginia [General Finance] objects to the confirmation of the Chapter 13 "Adjustment of Debts of an Individual with Regular Income" plan of James and Pamela Powell [debtors].

The debtors propose to pay their unsecured creditors, of which General Finance is one, fifty percent [50%] of their respective allowed claims. General Finance argues the payment to unsecured creditors should be at least seventy-five percent [75%], otherwise, the plan is not proposed in "good faith" as required by 11 U.S.C. 1325(a)(3).

The creditor argues that Powell was receiving weekly take-home pay of $282.53 on June 28, 1979, when he was granted a loan and, further, that his housing expenses are now less.

Factually, the Court finds that for several months Powell's weekly take-home pay has been greatly reduced, to thirty hours per week, and the net income is but $188.72. This is clearly supported by pay stubs admitted into evidence. Under the current situation, a forty hour week would be rare. Further, now that the debtors are renting rather than buying a home, and most utilities are included in the rent, the monthly housing cost is $84 less per month.

The Court finds this $84 "surplus" inconsequential. The debtors' budget is spartan and includes nothing, for instance, for medical and drug expenses and recreation.

Are the creditors entitled to every nickel of the excess of income over expenditures? I think not. "Good faith" does not mean that every shekel must go that way.

It is the clear intent of the Congress to promote Chapter 13 plans in contradistinction to Chapter 7 liquidation. The entire legislative history on the subject of Chapter 13 is pertinent and forms a basis for any Chapter 13 determination.

■ Section 1325(a) of the Bankruptcy Code, 11 U.S.C. 1325(a), establishes the standard for confirmation of a debtor's plan by the court. Two elements of that standard are here pertinent:

"(3) the plan has been proposed in good faith . . . (4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of cash allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date."

For construction's sake, we address paragraph (4) first. In its simplest fashion, unsecured creditors shall receive more under a Chapter 13 plan than they would in a Chapter 7 liquidation.

Here the debtors propose to pay their unsecured creditors 50% of the $3,551.00 they owe, or $1,775.50. In a liquidation of this estate, the creditors would receive $0, nothing. The $707.00 worth of personalty in which they have a possible equitable interest is claimed exempt.

In light of this, a 50% distribution to creditors more than meets the standard.

Relative to paragraph (3), we are forced to face the greatest mystery contained in Chapter 13 legislation: What is *good faith?* The term is simply no where defined; therefore, great discretion is reposed in the court. This is good. See Judge Joe Lee: "Chapter 13 nee Chapter XIII," *The American Bankruptcy Law Journal,* volume 53, page 303, Fall, 1979; and William H. Lake:

"Chapter 13 of the Bankruptcy Code: Is it a Debtor's Paradise and a Creditor's Nightmare?," *Commercial Law Journal*, page 365, October, 1979.

The instant case poses no problems; it is thoroughly proposed in good faith. The evidence would disclose what purports to be an honest debtor who is anxious to work, whose expenses are reasonable and who is keeping his family together. He has never been in bankruptcy before. He proposes to pay his unsecured creditors 50% of what he owes them. The Court finds the $84 "surplus" to be exaggerated, but even if it were not, other use of this would not reflect bad faith.

The plan is confirmed.

What follows is not necessarily dictum, for it does obtain in the present case, but it may also serve as a guideline, or at least a point of encounter, in future matters.

In essence, General Finance is seeking to require the "best effort" of the debtor, the maximum payment he is actually able to make to creditors. The Court finds that (1) this is the best effort but (2) the "best effort" standard does not apply.

Indeed, one of the proposed amendments to the Bankruptcy Code pending before the Congress is the "technical amendments" bill which would amend 11 U.S.C. 1325(a)(3) to require a debtor's best effort. S. 658, 96th Cong., 1st Sess., section 188. It should be obvious, then, that this is not now a requirement for confirmation.

IT IS SO ORDERED.